

**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02117 |

| | |
|---|---|
| **Entity:** | Liberty Mutual Insurance Company<br>Entity ID Number 1765547 |
| **Entity Served:** | Liberty Mutual Insurance Company |
| **Title of Action:** | Jeffrey Hunter vs. Liberty Mutual Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Davidson County Chancery Court, Tennessee |
| **Case/Reference No:** | 15-189-III |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 04/09/2015 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | TN Department of Commerce and Insurance on 04/06/2015 |
| **How Served:** | Certified Mail |
| Sender Information: | Benjamin E. Goldammer<br>615-742-4800 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

EXHIBIT 1

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

April 06, 2015

Liberty Mutual Insurance Company
2908 Poston Avenue, % C S C
Nashville, TN 37203
NAIC # 23043

Certified Mail
Return Receipt Requested
7012 3460 0002 8948 4945
Cashier # 19480

Re:     Jeffrey And Margo Hunter   V.   Liberty Mutual Insurance Company

          Docket # 15-189-Iii

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 06, 2015, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
     Davidson County
     One Public Square, Suite 308
     Nashville, Tn 37201

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | C O P Y ALIAS SUMMONS | CASE FILE NUMBER 15-189-III |
|---|---|---|
| PLAINTIFF JEFFREY HUNTER and MARGO HUNTER | | DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY |

TO:  (NAME AND ADDRESS OF DEFENDANT)

Method of Service:

Liberty Mutual Insurance Company
c/o Reg. Agent: Tennessee Dept. of Commerce and Insurance
500 James Robertson Parkway
Nashville, TN 37243-1204

G  Certified Mail
G  Davidson Co. Sheriff
X  *Comm. Of Insurance
G  *Secretary of State
G  *Out of County Sheriff
G  Private Process Server
G  Other

List each defendant on a separate summons.                    *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) Benjamin E. Goldammer (#26328) Kay, Griffin, Enkema & Colbert, P.L.L.C. 222 2nd Avenue North Suite 340-M Nashville, Tennessee 37201 615-742-4800 | FILED, ISSUED & ATTESTED MAR 1 8 2015 CRISTI SCOTT, Clerk and Master By: 1 Public Square Suite 308 Nashville, TN 37201 *Deputy Clerk & Master* |
|---|---|

## NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | **Sheriff** |

***Submit one original plus one copy for each defendant to be served.

ADA Coordinator, Cristi Scott 862-5710

I HEREBY CERTIFY THAT THIS IS A TRUE COPY OF ORIGINAL INSTRUMENT FILED IN MY OFFICE. THIS _18_ DAY OF _March_ 20_15_ CRISTI SCOTT, CLERK & MASTER BY _____ DEPUTY

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____     ☐ Not Found _____
☐ Not Served _____     ☐ Other _____

| DATE OF RETURN: | By: |
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____, 20___. <br><br> Signature of _____ Notary Public or _____ Deputy Clerk <br><br><br> My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

    Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to: Clerk & Master
               1 Public Square
               Suite 308
               Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Cristi Scott, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | CRISTI SCOTT, Clerk & Master <br><br> By: <br><br><br> D.C. & M. |

COPY

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

JEFFREY HUNTER and MARGO  )
HUNTER,                    )
                          )
    Plaintiffs,           )
                          )  No. 15-189-III
v.                        )
                          )  JURY DEMAND
LIBERTY MUTUAL INSURANCE  )
COMPANY,                  )
                          )
    Defendant.            )

## COMPLAINT

### I.    The Parties

1.    Plaintiffs Jeffrey and Margo Hunter (the "Hunters") are citizens and residents of Davidson County, Tennessee.

2.    Defendant Liberty Mutual Insurance Company ("Liberty") is a foreign corporation authorized to do business in the State of Tennessee.

### II.    The Facts

3.    This is an action by the Hunters for breach of an insurance contract. Liberty failed to fully reimburse the Hunters for a fire that destroyed their home. After participating in the policy's appraisal process for months and after receiving a ruling against it on all issues, Liberty has still refused to pay the Hunters the over $357,000.00 owed under the policy.

4.    The Hunters sue for breach of contract. The Hunters have notified Liberty that its failure to pay constitutes bad faith and intend to amend this Complaint to assert that claim once the sixty-day statutory period runs.

<u>The Insurance Claim</u>

5.     In 2004, the Hunters purchased a home located at 789 Elysian Fields Road, Nashville, Tennessee (the "Property").

6.     In March, 2013, the Property was destroyed by fire.

7.     At the time of the fire, Liberty insured the Property pursuant to a LibertyGuard Deluxe Homeowners Policy, No. H37-251-452449-40 (the "Policy"). A copy of the Policy is attached as **Exhibit 1**.

8.     The Policy sets the following base limits of liability:

- Coverage A (Dwelling)               $981,500.00
- Coverage B (Other Structures)       $98,150.00
- Coverage C (Personal Property)      $736,130.00

9.     The Policy also contains an Inflation Protection Endorsement, which increases the limits of liability outlined above based on inflation.  According to a June 27, 2014 letter from Liberty, the Inflation Protection Endorsement increases the limits of insurance outlined above as follows:

- Coverage A (Dwelling)               $981,500.00 x 1.006 = $987,389.00
- Coverage B (Other Structures)       $98,150.00 x 1.006 = $98,738.90
- Coverage C (Personal Property)      $736,130.00 x 1.006 = $740,546.78

A copy of Liberty's June 27, 2014 letter is attached as **Exhibit 2**.

10.     The Policy also contains a Homeprotector Plus Endorsement.  On its website, Liberty markets its Homeprotector Plus Endorsement as an increased level of homeowner protection that "provides additional coverage for unforeseen costs when rebuilding your home".

11.    The Homeprotector Plus Endorsement modifies the Loss Settlement

portion of the Policy, and states in relevant part:

> 3. Loss Settlement.  Covered property losses are settled as follows:
> a. The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:
>> (1) We will pay the cost of repair or replacement, but not exceeding:
>>> (a) The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;
>>> (b) **With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;**
>>> (c) With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;
>>> (d) The amount actually and necessarily spent to repair or replace the damage.
>> (2) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.

(emphasis added).

12.    In other words, under Section 3(a)(1)(b) of the Loss Settlement portion

of the Homeprotector Plus Endorsement, Liberty agreed to pay up to an additional

20% over limits of insurance (as modified by the Inflation Protection Endorsement)

for the repair and replacement of any Building covered under Coverage A

(Dwellings), for a maximum possible total of $1,184,866.80 ($987,389.00 x 120%).

13.    The Policy also contains an Additional Coverage for "debris removal".

The Policy provides that this Additional Coverage "is included in the limit of

liability that applies to the damaged property."  However, the Policy goes on to

provide that "[i]f the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense."

14.     The Policy also contains an Additional Coverage for "trees, shrubs, plants or lawns." The Policy provides that Liberty "will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns."

15.     In sum, the Hunters had the following limits of insurance available to cover the loss:

| | |
|---|---|
| · Coverage A (Dwelling) | $1,184,866.80 |
| · Removal of Debris for Coverage A (Dwelling) | $49,369.45[1] |
| · Coverage B (Other Structures) | $98,738.90 |
| · Removal of Debris for Coverage B (Other Structures) | $4,936.95[2] |
| · Coverage C (Personal Property) | $740,546.78 |
| · Removal of Debris for Coverage C (Personal Property) | $37,027.34[3] |
| · Trees, Shrubs, Plants or Lawns | $49,369.45[4] |

Payments Under the Policy

16.     Following the loss, Liberty made certain payments to the Hunters under the Policy, but failed to pay the claim in full.

17.     By letter dated April 17, 2013, Liberty explained its breakdown of the amounts paid to date under Coverage A (Dwelling) ($987,389.00) and Coverage B (Other Structures) ($38,467.53). The letter goes on to explain that when payment

---

[1] This was calculated by taking 5% of the modified Coverage A number ($987,389.00) provided in Liberty's June 27, 2014 letter.
[2] This was calculated by taking 5% of the modified Coverage B number ($98,738.90) provided in Liberty's June 27, 2014 letter.
[3] This was calculated by taking 5% of the modified Coverage C number ($740,546.78) provided in Liberty's June 27, 2014 letter.
[4] This was calculated by taking 5% of the modified Coverage A number ($987,389.00) provided in Liberty's June 27, 2014 letter.

was made for these amounts, Liberty deducted $3,497.19 for non-recoverable depreciation and $1,000.00 for the deductible. A copy of the letter is attached as **Exhibit 3**.

18. By letter dated June 13, 2014, counsel for the Hunters provided Liberty detailed documentation of the Hunters' loss and requested payment of the amounts remaining under the Policy. A copy of this letter, without exhibits, is attached as **Exhibit 4**.

19. By letter dated June 27, 2014 (Exhibit 3), Liberty agreed to pay an additional $7,350.00 for pool repairs (which it categorized as a payment under Coverage B (Other Structures)). However, Liberty refused to pay any remaining sums for the Dwelling, Other Structures, Debris Removal or Trees, Shrubs, Plants or Lawns.

20. In its June 27, 2014 letter, Liberty also explained to the Hunters that it had deducted $3,497.19 in "non-recoverable depreciation" from the payments made under Coverages A and B. This was in direct violation of the Policy, as the Homeprotector Plus Endorsement provides that payments under these coverages will be made "without deduction for depreciation".

21. Based on Liberty's April 17, 2013 and June 27, 2014 letters, Liberty's position is that it has paid the following amounts to date under the Policy (less the $1,000.00 deductible):

| - Coverage A (Dwelling) | $987,389.00 |
|---|---|
| - Coverage B (Other Structures) | $42,320.34[5] |
| - Coverage C (Personal Property) | $740,546.78 |
| - Removal of Debris for Coverage C (Personal Property) | $2,877.28 |

## The Appraisal

22.     The Policy contains an appraisal clause that can be invoked by either

party to set the amount of the loss for the fire claim. The appraisal clause states:

> If you and we fail to agree on the amount of loss, either may demand
> an appraisal of the loss. In this event, each party will choose a
> competent appraiser within 20 days after receiving a written request
> from the other. The two appraisers will choose an umpire. If they
> cannot agree upon an umpire within 15 days, you or we may request
> that the choice be made by a judge of a court of record in the state
> where the "residence premises" is located. The appraisers will
> separately set the amount of loss. If the appraisers submit a written
> report of an agreement to us, the amount agreed upon will be the
> amount of loss. If they fail to agree, they will submit their differences
> to the umpire. **A decision agreed to by any two will set the
> amount of loss**.

(emphasis added).

23.     In its June 27, 2014 letter, Liberty appointed its appraiser (Mike

Gates) under the Policy's appraisal clause.

24.     By email dated July 4, 2014, the Hunters appointed their appraiser

(Gary Willits) under the Policy's appraisal clause.

25.     Mike Gates and Gary Willits were unable to agree to an umpire under

the appraisal clause. As a result, on August 28, 2014, Liberty filed a lawsuit styled

Liberty Mutual Insurance Company v. Jeffrey Hunter and Margo Hunter, No. 14-

---

[5] This figure has been calculated as follows: $38,467.53 (for Other Structures) - $3,497.19 (for non-recoverable depreciation) + $7,350 (for pool repairs under Other Structures).

1258-IV, Davidson County Chancery Court (the "Appointment Lawsuit"), requesting the appointment of an umpire under the appraisal clause of the Policy.

26.     On October 27, 2014 the parties submitted an agreed order in the Appointment Lawsuit pursuant to which all parties agreed to the appointment of David K. Taylor (the "Umpire"), of the law firm of Bradley Arant Boult Cummings LLP, as the umpire. The two appraisers thereafter submitted detailed appraisals to the Umpire and had several hearings with the Umpire to set the amount of the loss.

27.     The primary issue in dispute between the appraisers was the valuation of the loss to the dwelling itself. After the appraisal process commenced, Mike Gates conceded that, in initially valuing the loss, Liberty had underestimated the size of the Hunters' residence by approximately 1,100 square feet. Once Mike Gates made the concession of Liberty's massive error, he continued to try and justify Liberty's lower valuation of the loss by asserting that a portion of the fire and water damaged property could have simply been restored – as opposed to being gutted and rebuilt like the remainder of the residence. Ultimately, the Umpire rejected Liberty's position on this issue outright.

28.     On January 29, 2015, the Umpire issued his Umpire Appraisal Ruling. A copy of the Umpire Appraisal Ruling is attached as **Exhibit 5**. The Umpire Appraisal Ruling ruled in favor of the Hunters on all issues in dispute, using all of the numbers submitted by Gary Willits to the Umpire in his final appraisal summary.

29. The Umpire Appraisal Ruling determined that the Hunters' total loss was $1,521,299.06 and itemized the loss as follows:

| | |
|---|---|
| - Coverage A (Dwelling) | $1,294,703.04 |
| - Coverage B (Other Structures) | $89,855.90 |
| - Additional Coverage (Debris Removal Related to Removal of Debris Under Coverages A, B and C) | $63,053.76 |
| - Additional Coverage (Trees, Shrubs, Other Plants and Lawns) | $73,686.36 |

30. The Umpire Appraisal Ruling was subsequently agreed to by Gary Willits, the Hunters' appraiser. The decision of the Umpire and Gary Willits "set the amount of loss" under the Policy.

31. In the Umpire Appraisal Ruling, the Umpire and Gary Willits ruled that "[t]hose costs outlined above [in Paragraph 29] represent the cost of repair / replacement of the covered property (using like construction on the same premises and intended for the same occupancy and use as existed prior to the fire loss) and/or the actual cash value, as applicable."

Liberty's Additional Breach of the Policy

32. Following the issuance of the Umpire Appraisal Ruling, counsel for the Hunters communicated with counsel for Liberty verbally and in writing regarding payment of the loss. However, to date, Liberty has failed to make any additional payments under the Policy.

33. The following chart reflects the limits of insurance, the amount of each loss, the amount Liberty claims to have paid and the amount owed under the Policy (not including the $1,000.00 deductible):

| Coverage | Limit of Insurance | Amount of Loss | Amount Paid | Amount Owed |
|---|---|---|---|---|
| Coverage A (Dwelling) | $1,184,866.80 | $1,294,703.04 | $987,389.00 | $197,477.80 |
| Coverage B (Other Structures) | $98,738.90 | $89,855.90 | $42,320.34 | $47,535.56 |
| Additional Coverage (Debris Removal Related to Removal of Debris Under Coverages A, B and C) | $91,333.74 | $63,053.76 | $2,877.28 | $60,176.48 |
| Additional Coverage (Trees, Shrubs, Other Plants and Lawns) | $49,369.45 | $73,686.36 | $0.00 | $49,369.45 |
| | | | Total | $354,559.29 |

34.     In sum, based on the figures outlined above, Liberty owes the Hunters at least the following amounts under the Policy:[6]

| Coverage | Amount Owed |
|---|---|
| Coverage A (Dwelling) | $197,477.80 |
| Coverage B (Other Structures) | $47,535.56 |
| Additional Coverage (Debris Removal Related to Removal of Debris Under Coverages A, B and C) | $60,176.48 |
| Additional Coverage (Trees, Shrubs, Other Plants and Lawns) | $49,369.45 |
| Improperly Deducted Depreciation | $3,497.19 |
| Deductible | -$1,000.00 |
| Total | $357,056.48 |

35.     Liberty's failure to pay the amounts outlined above constitutes a breach of the Policy.

------

[6] The figures reflected in this itemization are based on calculations provided by Liberty, and the actual balance owed may vary once discovery is taken and Liberty discloses its method of calculating these figures.

## III. Cause of Action

36. The Hunters sue Liberty for breach of contract. As set forth above, Liberty has breached its obligations under the Policy by refusing to pay the full amount of the loss, refusing to pay under certain sections of the Policy and failing to comply with the Umpire Appraisal Ruling.

## IV. Demand

WHEREFORE, the Hunters demand:

A.  Damages in an amount exceeding $357,056.48;

B.  Post-judgment interest;

C.  Pre-judgment interest;

D.  A jury of six (6) to try this cause;

E.  That all costs be taxed to Liberty; and

F.  All other and further relief to which they may be entitled.

Respectfully submitted,

KAY, GRIFFIN, ENKEMA & COLBERT, PLLC

_____

James D. Kay, Jr. (#11556)
Benjamin E. Goldammer (#26328)
222 Second Avenue North
Suite 340M
Nashville, Tennessee 37201
615-742-4800

*Attorneys for Plaintiffs*

*000052*
Liberty Mutual Office
5301 Virginia Way Ste 200
Brentwood TN 37027


**Liberty Mutual.**
INSURANCE

Jeffrey Hunter
Margo Hunter
789 Elysian Fields Rd
Nashville TN 37204-4416

 **CONTACT US**

**Questions About
Your Policy**

**By phone**
1-615-371-6471
1-800-668-0593
Mon - Sat 7AM-11PM EST
Sun 9AM-7PM EST

**Liberty Mutual Office**
5301 Virginia Way Ste 200
Brentwood TN 37027

**Visit us online**
LibertyMutual.com

# Thank you for insuring with Liberty Mutual.

This package contains your homeowners insurance policy. The declarations page summarizes your selected coverages and lists any discounts and savings that have been applied. This is the most recent copy per your request.

Please review this information and keep it with your important documents. For your reference, we have provided *A Guide to Your Declarations Page* on the reverse side of this letter.

Remember, you can visit LibertyMutual.com/eService 24 hours a day to get policy information and manage your Liberty Mutual account. You can also elect to receive your policy documents electronically by selecting the Paperless options button under Your Profile on the eService homepage.

If you have any questions about your coverage, please call us at **1-615-371-6471/ 1-800-668-0593.**

Sincerely,
Your Liberty Mutual Service Team

**To report a claim**

**By phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/Claims

**Mobile**
Scan QR Code with your iPhone or Android smartphone to download the claims app or download a free reader app at www.i-nigma.mobi



4G008023H372S145244940000052




**EXHIBIT**
**1**

 **MANAGE YOUR
ACCOUNT ONLINE**

**Sign up for eService**
LibertyMutual.com/
eService

**THIS IS NOT YOUR HOMEOWNERS INSURANCE BILL.**



 # A Guide to Your Declarations Page

To help you understand where to find information on your Policy Declarations page, below are descriptions of the different sections that may appear.

For information pertaining to your own policy, please refer to the enclosed Policy Declarations Page, which declares the specific details of the insurance policy you have purchased. If you have any questions, please call us at 1-615-371-6471/1-800-668-0593.

## Coverage Information

### Standard Policy Coverages
This section includes the basic coverages to protect your home and property with corresponding coverage limits, which are the amounts available for covered losses. Section I Coverages apply to property loss and Section II Coverages apply to liability protection for accidental bodily injury or property damage.

### Additional Coverages
Optional coverages you have selected are listed in this section. These coverages enhance your policy and/or increase your limits for certain coverages.

### Scheduled Property
If you elect to purchase additional coverage for specific items such as jewelry or silverware, your scheduled personal property is listed with the applicable limits.

## Other Charges

If there are any additional charges applied to your policy, they will be listed in this section, and may include charges that are required by your state.

## Discounts and Benefits

This section lists the discounts applied to your policy. For a list of available discounts, please visit LibertyMutual.com/home-discounts.

## Endorsements

Endorsements included on your policy are listed in this section. An endorsement is a change to your policy.

## Important Messages

This section contains special notes about certain coverages or state-specific information.

Please visit LibertyMutual.com/insurance-glossary for our Insurance Glossary, which includes explanations of some key terms.

This Guide is intended to provide a general explanation only and is not part of your insurance policy. The provisions, limitations and exclusions of your insurance policy, including your Policy Declarations, will determine whether a claim is covered. You should carefully review your contract for specific details pertaining to your policy.

# Policy Declarations

## A summary of your homeowners insurance coverage



Reason for your new declarations page: Reprint Policy Change # per Customer Request
**Your declarations are effective as of 12/15/2012.**

 **INSURANCE INFORMATION**

| | |
|---|---|
| **Named Insured**<br>Jeffrey Hunter<br>Margo Hunter | **Policy Number**<br>H37-251-452449-40 |
| **Mailing Address**<br>789 Elysian Fields Rd<br>Nashville TN 37204-4416 | **Policy Period**<br>12/15/2012-12/15/2013 12:01AM<br>standard time at the address of the<br>Named Insured at Insured Location. |
| **Insured Location**<br>Same as Mailing address above | |

 **QUESTIONS ABOUT YOUR POLICY?**

**By phone**
1-615-371-6471
1-800-668-0593

**Liberty Mutual Office**
5301 Virginia Way Ste 200
Brentwood TN 37027

**Sales Representative**
Anthony J Trepka

**To report a claim**
**By phone**
1-800-225-2467
**Online**
LibertyMutual.com/Claims

---

| Premium Summary | | |
|---|---|---|
| Standard Policy with HomeProtector Plus | $ | 1,865.00 |
| Additional Coverages | $ | 11.00 |
| **Total 12 Month Policy Premium** | **$** | **1,876.00** |

Your discounts and benefits have been applied to your total policy premium. Please refer to the Discounts and Benefits section for more details.

**THIS IS NOT YOUR HOME INSURANCE BILL.**

 **INSURANCE GLOSSARY**

For definitions of insurance terms, please visit LibertyMutual.com/insurance-glossary.

 Your policy includes HomeProtector Plus, which provides enhanced coverage in case of a loss. Please see your endorsement for details.

## Coverage Information

### Standard Policy with HomeProtector Plus

| Section I Coverages | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ | 981,500 | |
| B. Other Structures on Insured Location | $ | 98,150 | |
| C. Personal Property with Replacement Cost | $ | 736,130 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | | |

**Section II Coverages**

| | | | |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 1,000,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

**Policy Deductibles**

Losses covered under Section I are subject to a deductible of: $1,000

If losses are a result of Wind/Hail they are subject to a deductible of: $2,500

| Total Standard Policy with HomeProtector Plus | $ | 1,865 |
|---|---|---|

| Additional Coverages | DEDUCTIBLE | | LIMITS | | PREMIUM |
|---|---|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ | 1,000 | $ | 0 |
| Backup Of Sewer And Sump Pump Overflow Coverage | $ 1,000 | $ | 10,000 | | INCL |
| Coverage E & F increased limit | | | | $ | 11 |
| **Total Additional Coverages** | | | | **$** | **11** |

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 17 of 73 PageID #: 21



## Discounts and Benefits

**Your discounts and benefits have been applied to your total policy premium.**

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Protective Device Discounts:
  Smoke/Heat Alarm-All Floors, Extinguishers
  and Dead Bolt Locks
  Complete Reporting Fire Alarm
  Complete Reporting Police Alarm

- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto

 **HOME DISCOUNTS**
For more information on discounts, please visit LibertyMutual.com/home-discounts.

## Endorsements — Changes to Your Policy

- LibertyGuard® Deluxe Homeowner Policy (HO 00 03 04 91)
- Backup Of Sewer And Sump Pump Overflow Coverage (FMHO-2062)
- Protective Devices (HO 04 16 04 91)

- Amendatory Mold End (FMHO 3370 1112)
- Special Provisions (FMHO 3382 1112)
- No Secll/Limit l-Daycare (HO 04 96 04 91)
- Windstorm or Hail Deductible (FMHO 3366 0912)
- Fuel Storage Exclusion (FMHO-1097 1/97)
- Arson Reward (FMHO-993)

- Home Protector Plus (FMHO-1183)

- Credit Card, Fund Transfer, Forgery (HO 04 53 04 91)
- Homeowner Amendatory Endorsement (FMHO 2493 0811)
- Seepage Exclusion End (FMHO 3391 1112)
- Inflation Protection (FMHO-2835 11 03)
- Lead Poisoning Exclusion (FMHO-976 05/92)
- Waiver Of Ded-Theft (FMHO-1087 2/96)

- Education Coverage End (FMHO-2357)

## Important Messages

**Flood Insurance:** Your Homeowners policy does **not** provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

**Your Service Office**
**Liberty Mutual Office**
**5301 Virginia Way Ste**
**200**
**Brentwood TN 37027**

LibertyGuard® Deluxe Homeowners Policy Declarations
Coverage provided and underwritten by Liberty Insurance Corporation, Boston MA.

This policy, including endorsements listed above, is countersigned by:

Dexter R. Legg
Secretary

David H. Long
President

Stephen McAnena
Authorized Representative

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 18 of 73 PageID #: 22





# LibertyGuard Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NON ASSESSABLE**

FMHO 943 (ED. 11-96)                    Liberty Mutual Group



# LIBERTYGUARD DELUXE HOMEOWNERS POLICY
## HO 00 03 EDITION 04 91
### TABLE OF CONTENTS

**Page**

Agreement............................................. 1
Definitions........................................... 1
**SECTION I - PROPERTY COVERAGES**
  Coverage A Dwelling........................... 1
  Coverage B Other Structures................. 2
  Coverage C Personal Property.............. 2-3
  Coverage D Loss of Use....................... 3
  Additional Coverages........................... 3
  Debris Removal................................. 3
  Reasonable Repairs........................... 3-4
  Trees, Shrubs and Other Plants............ 4
  Fire Department Service Charge.......... 4
  Property Removed............................. 4
  Credit Card, Fund Transfer Card, Forgery
    and Counterfeit Money................... 4
  Loss Assessment............................... 4-5
  Collapse.......................................... 5
  Glass or Safety Glazing Material.......... 5
  Landlord's Furnishings....................... 5-6
**SECTION I - PERILS INSURED AGAINST**
  Coverage A Dwelling and Coverage B
  Other Structures................................. 6
  Coverage C Personal Property.............. 6-7
**SECTION I - EXCLUSIONS**
  Ordinance or Law............................... 7
  Earth Movement................................. 7-8
  Water Damage.................................... 8
  Power Failure.................................... 8
  Neglect............................................ 8
  War................................................. 8
  Nuclear Hazard.................................. 8
  Intentional Loss................................. 8
  Weather Conditions............................ 8
  Acts or Decisions.............................. 8
  Faulty, Inadequate or Defective............ 8
**SECTION I - CONDITIONS**
  Insurable Interest and Limit of Liability... 8
  Your Duties After Loss....................... 8-9
  Loss Settlement................................. 9-10
  Loss to a Pair or Set.......................... 10
  Glass Replacement............................. 10

**Page**

Appraisal............................................. 10
Other Insurance.................................... 10
Suit Against Us.................................... 10
Our Option.......................................... 10
Loss Payment...................................... 10
Abandonment of Property...................... 10
Mortgage Clause.................................. 10
No Benefit To Bailee............................. 10
Nuclear Hazard Clause.......................... 10-11
Recovered Property............................... 11
Volcanic Eruption Period........................ 11
**SECTION II - LIABILITY COVERAGES**
  Coverage E Personal Liability................. 11
  Coverage F Medical Payments to Others... 11
**SECTION II - EXCLUSIONS**
  Coverage E Personal Liability and Coverage F
  Medical Payments to Others.................... 11-13
  Coverage E Personal Liability................. 13
  Coverage F Medical Payments to Others.... 13
**SECTION II - ADDITIONAL COVERAGES**
  Claim Expenses................................... 13
  First Aid Expenses.............................. 14
  Damage to Property of Others................ 14
  Loss Assessment................................. 14
**SECTION II - CONDITIONS**
  Limit of Liability.................................. 14
  Severability of Insurance....................... 14
  Duties After Loss................................. 14-15
  Duties of an Injured Person.................... 15
  Payment of Claim................................. 15
  Suit Against Us................................... 15
  Bankruptcy of an Insured....................... 15
  Other Insurance.................................. 15
**SECTIONS I AND II - CONDITIONS**
  Policy Period...................................... 15
  Concealment or Fraud........................... 15
  Liberalization Clause............................ 15
  Waiver or Change of Policy Provisions....... 15
  Cancellation....................................... 15-16
  Non-Renewal...................................... 16
  Assignment........................................ 16
  Subrogation........................................ 16
  Death................................................ 16
  **\*MUTUAL POLICY CONDITIONS**.............. 16

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.
   Under Section II, "insured" also means:
   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";
   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:
   a. The "residence premises";
   b. The part of other premises, other structures and grounds used by you as a residence and:
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;
   d. Any part of a premises:
      (1) Not owned by an "insured"; and
      (2) Where an "insured" is temporarily residing;
   e. Vacant land, other than farm land, owned by or rented to an "insured";
   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
   g. Individual or family cemetery plots or burial vaults of an "insured"; or
   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:
   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;
   where you reside and which is shown as the "residence premises" in the Declarations.
   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

## SECTION I - PROPERTY COVERAGES

**COVERAGE A - Dwelling**

We cover:
1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 21 of 73 PageID #: 25



## COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or
2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.
   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.
6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media; for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.
    Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances.
   This includes:
   a. Their equipment and accessories; or
   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances.
      Electronic apparatus includes:
      (1) Accessories or antennas; or
      (2) Tapes, wires, records, discs or other media;

Case 3:15-cv-00519 Document 1-1 Filed 05/05/15 Page 22 of 73 PageID #: 26



for use with any electronic apparatus.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:
a. Used to service an "insured's" residence; or
b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:
a. Books of account, drawings or other paper records; or
b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

### COVERAGE D - Loss Of Use

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.
a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or
b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

### ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:
a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or
b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:
a. Your tree(s) felled by the peril of Windstorm or Hail;
b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or
c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 23 of 73 PageID #: 27


If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. Does not increase the limit of liability that applies to the covered property;

b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises." We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 24 of 73 PageID #: 28



Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
   a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;
   b. Hidden decay;
   c. Hidden insect or vermin damage;
   d. Weight of contents, equipment, animals or people;
   e. Weight of rain which collects on a roof; or
   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**
   We cover:
   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and
   b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**
b. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.
c. **Explosion.**
d. **Riot or civil commotion.**
e. **Aircraft,** including self-propelled missiles and spacecraft.
f. **Vehicles.**
g. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
h. **Vandalism or malicious mischief.**
i. **Falling objects.**
   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a failing object. Damage to the falling object itself is not included.
j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
   This peril does not include loss:
   (1) To the system or appliance from which the water or steam escaped;
   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or
   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

   In this peril, a plumbing system does not include a sump, sump pump or related equipment.
l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
   We do not cover loss caused by or resulting from freezing under this peril.



m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
(1) Maintain heat in the building; or
(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**
This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.
The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;
2. Caused by:
   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain the system and appliances of water;
   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
      (1) Fence, pavement, patio or swimming pool;
      (2) Foundation, retaining wall, or bulkhead; or
      (3) Pier, wharf or dock;
   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
   d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;
   e. Any of the following:
      (1) Wear and tear, marring, deterioration;
      (2) Inherent vice, latent defect, mechanical breakdown;
      (3) Smog, rust or other corrosion, mold, wet or dry rot;
      (4) Smoke from agricultural smudging or industrial operations;

      (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.
      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
      (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;
      (7) Birds, vermin, rodents, or insects; or
      (8) Animals owned or kept by an "insured."
      If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**
2. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow,

Case 3:15-cv-00519  Document 1-1  Filed 05/05/15  Page 26 of 73 PageID #: 30



sleet, sand or dust enters through this opening. This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.
This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
This peril does not include loss caused by theft:
   a. Committed by an "insured";
   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or
   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."
   This peril does not include loss caused by theft that occurs off the "residence premises" of:
   a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;
   b. Watercraft, and their furnishings, equipment and outboard engines or motors; or
   c. Trailers and campers.

10. **Falling objects.**
This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
This peril does not include loss:
   a. To the system or appliance from which the water or steam escaped;
   b. Caused by or resulting from freezing except as provided in the peril of freezing below; or
   c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."
   In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
   a. Maintain heat in the building; or
   b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**
This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

**SECTION I - EXCLUSIONS**

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
   (1) Fire;
   (2) Explosion; or
   (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;



ensues and then we will pay only for the ensuing loss.
This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:
(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
(2) Water which backs up through sewers or drains or which overflows from a sump; or
(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises."But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:
(1) Undeclared war, civil war, insurrection, rebellion or revolution;
(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.
Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:
(1) By or at the direction of an "insured"; and
(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;
b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;
c. **Faulty, inadequate or defective:**
(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling; or
(4) Maintenance;
of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:
a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or
b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:
a. Give prompt notice to us or our agent;
b. Notify the police in case of loss by theft;
c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;
d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and
(2) Keep an accurate record of repair expenses;
e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
f. As often as we reasonably require:
(1) Show the damaged property;
(2) Provide us with records and documents we request and permit us to make copies; and
(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;
g. Send to us, within 60 days after our request, your signed, sworn proof of loss

Case 3:15-cv-00519  Document 1-1  Filed 05/05/15  Page 28 of 73 PageID #: 32



which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 29 of 73 PageID #: 33



within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:
   a. Repair or replace any part to restore the pair or set to its value before the loss; or
   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
   Each party will:
   a. Pay its own appraiser; and
   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. Reach an agreement with you;
   b. There is an entry of a final judgement; or
   c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**
   The word "mortgagee" includes trustee.
   If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
   If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
   If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.
   If we pay the mortgagee for any loss and deny payment to you:
   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
   Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**
   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or un-controlled or however caused, or any consequence of any of these.

Page 10 of 16



b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**
If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F - Medical Payments To Others**
We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":
   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;
   b. Is caused by the activities of an "insured";
   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or
   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":
   a. Which is expected or intended by the "insured";
   b. Arising out of or in connection with a "business" engaged in by an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":
      (1) On an occasional basis if used only as a residence;
      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or
      (3) In part, as an office, school, studio or private garage;
   d. Arising out of the rendering of or failure to render professional services;
   e. Arising out of a premises:
      (1) Owned by an "insured";
      (2) Rented to an "insured"; or
      (3) Rented to others by an "insured"; that is not an "insured location";
   f. Arising out of:
      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 31 of 73 PageID #: 35



(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

    (a) Not owned by an "insured"; or

    (b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

    (a) Used to service an "insured's" residence;

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

    (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

    (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

    (c) One or more outboard engines or motors with 25 total horsepower or less;

    (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

    (e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

        (1) You acquire them prior to the policy period; and

            (a) You declare them at policy inception; or

            (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

        (ii) You acquire them during the policy period.

        This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

    (a) Less than 26 feet in overall length;

    (b) 26 feet or more in overall length, not owned by or rented to an "insured."

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as


defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employees" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:

   a. Liability:
      (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;
      (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:
         (a) That directly relate to the ownership, maintenance or use of an "insured location"; or
         (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";
         unless excluded in (1) above or elsewhere in this policy;

   b. "Property damage" to property owned by the "insured";

   c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

   d. "Bodily injury" to any person eligible to receive any benefits:
      (1) Voluntarily provided; or
      (2) Required to be provided;
      by the "insured" under any:
      (1) Workers' compensation law;
      (2) Non-occupational disability law; or
      (3) Occupational disease law;

   e. "Bodily injury" or "property damage" for which an "insured" under this policy:
      (1) Is also an insured under a nuclear energy liability policy; or
      (2) Would be an insured under that policy but for the exhaustion of its limit of liability.
      A nuclear energy liability policy is one issued by:
      (1) American Nuclear Insurers;
      (2) Mutual Atomic Energy Liability Under-writers;
      (3) Nuclear Insurance Association of Canada;
      or any of their successors; or

   f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

   a. To a "residence employee" if the "bodily injury":
      (1) Occurs off the "insured location"; and
      (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

   b. To any person eligible to receive benefits:
      (1) Voluntarily provided; or
      (2) Required to be provided;
      under any:
      (1) Workers' compensation law;
      (2) Non-occupational disability law; or
      (3) Occupational disease law;

   c. From any:
      (1) Nuclear reaction;
      (2) Nuclear radiation; or
      (3) Radioactive contamination;
      all whether controlled or uncontrolled or however caused; or
      (4) Any consequence of any of these; or

   d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 33 of 73 PageID #: 37



2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":
   a. To the extent of any amount recoverable under Section I of this policy;
   b. Caused intentionally by an "insured" who is 13 years of age or older;
   c. To property owned by an "insured";
   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or
   e. Arising out of:
      (1) A "business" engaged in by an "insured";
      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or
      (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.
         This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or
b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:
a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or
b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:
1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);
2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

---

**SECTION II - CONDITIONS**

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This

condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:
   a. Give written notice to us or our agent as soon as is practical, which sets forth:
      (1) The identity of the policy and "insured";
      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and
      (3) Names and addresses of any claimants and witnesses;
   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 34 of 73 PageID #: 38


c. At our request, help us:
   (1) To make settlement;
   (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
   (3) With the conduct of suits and attend hearings and trials; and
   (4) To secure and give evidence and obtain the attendance of witnesses;
d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;
e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**
   The injured person or someone acting for the injured person will:
   a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.
The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.
   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;
   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.
   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**
   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**
   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
      (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.
      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
         (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or


(b) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

---

## *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**SECRETARY**

**PRESIDENT**

Includes copyrighted material of Insurance Services Office,
with its permission.
Copyright, Insurance Services Office, Inc., 1990

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 36 of 73 PageID #: 40



# HOMEPROTECTOR PLUS ENDORSEMENT

## A. INCREASED SPECIAL LIMIT OF LIABILITY - JEWELRY, WATCHES, FURS, PRECIOUS AND SEMI-PRECIOUS STONES

Section I, Coverage C - Personal Property. Special Limits of Liability. Paragraph 5 is replaced with:

5. Jewelry, watches, furs, precious and semi-precious stones are insured for accidental direct physical loss or damage. The following exclusions and limitations apply:

   a. $2500 for loss by theft, subject to a maximum of $1000 for any one article.

   b. The limit of liability stated in the declarations page for Coverage C, for loss caused by perils named under Coverage C of this policy, other than theft.

   c. $2500 for loss caused by perils not named and not excluded in this policy, subject to a maximum of $1000 for any article.

   d. We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin or inherent vice.

## B. REPLACEMENT COST PROVISION - DWELLING AND PERSONAL PROPERTY

You must meet the following additional Section I Condition for this provision to apply:

17. Additions or Changes to Dwelling - Notice to Company. You must inform us within 90 days of the start of any additions, alterations or improvements to the dwelling that will increase the replacement cost of the dwelling by $5,000 or more.

If you meet Condition 17, then Section I, Condition 3. Loss Settlement, is deleted and replaced by the following:

3. Loss Settlement. Covered property losses are settled as follows:

   a. The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:

      (1) We will pay the cost of repair or replacement, but not exceeding:

         (a) The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;

         (b) With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

         (c) With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

         (d) The amount actually and necessarily spent to repair or replace the damage.

      (2) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.

         However, if the cost to repair or replace the damage is both:

         (a) Less than 5% of the amount of insurance in this policy on the building;

            and

         (b) Less than $2500;

         We will settle the loss according to the provisions of a.(1) above whether or not actual repair or replacement is complete.

   b. Awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings, and structures that are not buildings; at actual cash value at the time of loss but not exceeding the amount needed to repair or replace.



Case 3:15-cv-00519 Document 1-1 Filed 05/05/15 Page 37 of 73 PageID #: 41



    c. Personal property, carpeting and household appliances: at replacement cost but not exceeding the amount needed to repair or replace subject to the following:

        (1) Our limit of liability for loss to Personal Property shall not exceed the smallest of the following:

            (a) Replacement cost with a similar item of like kind and quality at the time of loss;

            (b) The full cost of repair;

            (c) Any special limit of liability described in the policy or stated in this endorsement; or

            (d) The Coverage C limit of liability stated in the declarations, as modified by the Inflation Protection of the policy.

        (2) This endorsement shall not apply to:

            (a) Fine arts and items which, by their nature cannot be replaced with new items;

            (b) Articles whose age or history contribute substantially to their value including souvenirs or collector's items.

            (c) Property that is unusable for the purpose for which it was originally intended due to age or historic condition.

        (3) We will not pay for any loss to personal property under this endorsement until actual repair or replacement is complete.

    d. You may disregard the replacement cost provision and make a claim for loss of or damage to property on an actual cash value basis and then make claim within 180 days after loss for additional liability under this endorsement.

## C. INCREASED LIMIT - COVERAGE D

We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2 and 3 of Coverage D - Loss of Use.

## D. ADDITIONAL COVERAGES

REFRIGERATORS AND FREEZERS CONTENTS COVERAGE

We cover the contents of deep freeze or refrigerated units on the residence premises from the perils of:

1. Fluctuation or total interruption of electric power, either on or off premises, resulting from conditions beyond the control of the "insured".

2. Mechanical breakdown of any refrigeration equipment on premises including the blowing of fuses or circuit breakers.

We do not cover loss caused by the following additional exclusions:

1. Disconnection or termination of power due to turning off any switch.

2. Inability of power source to provide sufficient power due to government order, lack of fuel or lack of generating capacity to meet demand.

SPECIAL LIMIT - We will not pay more than $500 of your loss of refrigerator or freezer contents resulting from the above perils.

All other provisions of this policy apply.

LOCK REPLACEMENT COVERAGE

We will pay up to $250 for replacing the locks or cylinders on the exterior doors of the residence premises when your keys have been stolen. The theft of the keys must be reported to the police for this coverage to apply.

This coverage is additional insurance. No deductible applies to this coverage.

Case 3.13-cv-00319 Document 1-1 Filed 05/03/13 Page 38 of 73 PageID #: 42



**BACK UP OF SEWER AND SUMP PUMP OVERFLOW COVERAGE ENDORSEMENT**

**(This is not Flood Insurance)**

This endorsement modifies such insurance as is afforded by this policy.

<u>**DEFINITIONS**</u>

The following definition is added:

The term "flood" as used in this endorsement means a general and temporary condition of partial or complete inundation of normally dry land areas from:

1. the unusual and rapid accumulation of runoff of surface waters from any source;

2. the overflow of inland or tidal waters;

3. waves, tides or tidal waves; or

4. spray from any of these, whether or not driven by wind.

<u>**PERILS INSURED AGAINST - SECTION I**</u>

For an additional premium, we cover risks of direct physical loss to property described in Coverage A - Dwelling and Coverage C - Personal Property described below when caused by a peril listed below, unless the loss is excluded in this policy.

1. Sewer Back-up, meaning only direct loss to covered property caused by effluent which backs up through sewers or drains which are a part of the "residence premises".

2. Sump Pump Overflow, meaning only direct loss to covered property caused by water which overflows or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system, or other type system designed to remove subsurface water from the foundation area of the "residence premises."

Direct physical loss caused by water which backs up through sewers or drains due to the mechanical failure of a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises" is covered.

This coverage does not apply if the loss is caused by the negligence of any insured.

<u>**PROPERTY COVERAGES - SECTION I**</u>

The coverage provided by this endorsement only applies to the dwelling described in Coverage A and the following Coverage C personal property items:

- Clothes washers and dryers
- Food freezers and the food in them
- Refrigerators
- Ranges
- Portable dishwashers
- Dehumidifiers

<u>**EXCLUSIONS - SECTION I**</u>

With respect to the coverages provided by this endorsement only, the following exclusions under Section I - Exclusions are deleted:

**Water** which backs up through sewers or drains or which overflows from a sump pump.

**Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

<u>**DEDUCTIBLE**</u>

Each claim for loss to covered property will be adjusted separately. A $1000 deductible applies to each covered loss under this endorsement. All other provisions of this policy apply.

<u>**LIMIT OF LIABILITY**</u>

We will pay no more than the amount shown on the policy declarations for this coverage for any one loss caused by sewer back up or sump pump overflow as described above.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 39 of 73 PageID #: 43



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE

**HOMEOWNERS**
**HO 04 53 04 91**

### Increased Limit

For an additional premium, the limit of liability for Additional Coverage 6., Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ _____*.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

HO 04 53 04 91       Copyright, Insurance Services Office, Inc., 1990       Page 1 of 1

---

## PREMISES ALARM OR FIRE PROTECTION SYSTEM

**HO 04 16 04 91**

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO 04 16 04 91       Copyright, Insurance Services Office, Inc., 1990       Page 1 of 1



# AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling

Item 1. is amended as follows:

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

### COVERAGE C - Personal Property

The introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

The following limits are added:

12. $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

In the event Landlord Endorsement FMHO 3307

is part of this policy, the above coverage contained in Special Limits of Liability introductory paragraph and Subparagraphs 12 through 15 are deleted.

**Property Not Covered** under **COVERAGE C - Personal Property**

The final two subparagraphs of Item 3 (a. and b.) are replaced by the following:

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used solely to service an "insured's" residence; or

   b. Designed for assisting the handicapped;

In the event Landlord Endorsement FMHO 3307 is part of this policy, the above coverage contained in The Final two Subparagraphs of Item 3 (a. and b.) is deleted.

Item 10. is added as personal property items not covered.

10. Water or steam

**ADDITIONAL COVERAGES** is revised as follows:

Item 7. **Loss Assessment** is deleted in its entirety.

The following is added to Item 8. **Collapse.**

   With respect to this Additional Coverage:

   (1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.

   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

Case 3:15-cv-00519 Document 1-1 Filed 05/05/15 Page 41 of 73 PageID #: 45



(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Item 10. **Landlord's Furnishings** is deleted in its entirety.

## SECTION I - PERILS INSURED AGAINST

## COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

The following is added to item **2.b.**

(4) Footing(s)

The following are added to item **2.e.** Any of the following:

(10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

The final paragraph of Item 2. is further revised as follows:

If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

## SECTION II - EXCLUSIONS

Item **1.a.** under **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** is amended as follows:

Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"

(1) is of a different kind, quality, or degree than initially expected or intended; or

(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

## SECTION II - ADDITIONAL COVERAGES

Item **1.c.** under **Claims Expenses** is amended as follows:

Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Item **4. Loss Assessment** is deleted in its entirety.

All other policy terms and conditions apply.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 42 of 73 PageID #: 46



# AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DEFINITIONS**

The following definition is added to the DEFINITIONS section:

9. **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** means any type or form of fungus, rot, virus or bacteria. This includes mold, mildew and any mycotoxins (meaning a toxin produced by a fungus), other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I – PROPERTY COVERAGES**

**Additional Coverages**

The following Additional Coverage is added:

11. **Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From Any Covered Loss**

We will pay, up to the Additional Coverage – Mold Limit of Liability shown below, for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss.

**"Remediation"** means the reasonable and necessary treatment, containment, decontamination, removal or disposal of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by any covered peril insured against, and also consists of the following:

1. The reasonable costs or expense to remove, repair, restore, and replace that property including the costs to tear out and replace any part of the building as needed to gain access to the **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**; and

2. the reasonable costs or expense for the testing or investigation necessary to detect, evaluate or measure **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**; and

3. any loss of fair rental value, or reasonable increase in additional living expenses, that is necessary to maintain your normal standard of living, if **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss makes your residence premises uninhabitable.

We will pay no more than the Additional Coverage - Mold Limit of Liability shown below for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss during the policy period, regardless of the number of locations under the policy to which this endorsement is attached, the number of persons whose property is damaged, the number of "insureds," or the number of losses or claims made.

If there is a covered loss or damage to covered property, not caused, in whole or in part, by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus,"** loss payment will not be limited by the terms of this Additional Coverage, except to the extent that **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 43 of 73 PageID #: 47



## ADDITIONAL COVERAGE -- MOLD LIMIT OF LIABILITY

| | | | |
|---|---|---|---|
| **Mold Limit of Liability:** | **SECTION I** | **Aggregate Limit** | **$5,000** |

This Additional Coverage does not increase the limits of liability under Section I of the policy as shown in the Declarations.

### SECTION I -- EXCLUSIONS

Exclusion 1.i. is added:

i. Except as provided by **Additional Coverage 11.**, loss consisting of or caused by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** is excluded, even if resulting from a peril insured against under Section I. We do not cover **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus,"** even if resulting from a peril insured against under Section I, except as provided by **Additional Coverage 11.**

### SECTION II -- EXCLUSIONS

**Coverage E - Personal Liability and Coverage F - Medical Payments to Others**
Exclusion 1.m. is added:

m. Arising out of or aggravated by, in whole or in part by, **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus."**

**This endorsement takes precedence over all other endorsements attached to your policy.**

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 44 of 73 PageID #: 48



# SEEPAGE EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SECTION I – PERILS INSURED AGAINST**

**Coverage A – Dwelling and Coverage B – Other Structures**

**Paragraph 2.e.(9) is added:**

(9) Seepage, meaning a gradual, continuous, or repeated seepage or leakage of water, steam or fuel over a period of 14 days or more, resulting in damage to the structure, whether hidden or not.

**This endorsement takes precedence over all other endorsements attached to your policy.**

FMHO 3391 11 12                                                                                              Page 1 of 1

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 45 of 73 PageID #: 49



# SPECIAL PROVISIONS - TENNESSEE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SECTION I - PROPERTY COVERAGES

### COVERAGE C - Personal Property
**Special Limits of Liability**

Items **10.** and **11.** are deleted and replaced by the following (These are items **7.** and **8.** in form HO 00 08):

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories and antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus described in this item **10.**

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.
    Electronic apparatus includes:
    a. Accessories and antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus described in this item **11.**

In the event Landlord Endorsement FMHO 3307 is part of this policy, the above coverages contained in Special Limits of Liability 10 and 11 are deleted.

**Property Not Covered**

Item **3.b.** is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:
    (1) Accessories or antennas; or
    (2) Tapes, wires, records, discs or other media;
    for use with any electronic apparatus described in this item **3.b.**
    The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:
    a. Used to service an "insured's" residence; or
    b. Designed for assisting the handicapped;

### COVERAGE D - Loss of Use

For all forms other than **HO 00 04** and **HO 00 06**, item **1.** is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For forms **HO 00 04** and **HO 00 06**, item **1.** is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Case 3.15-cv-00519   Document 1-1   Filed 05/05/15   Page 46 of 73 PageID #: 50



Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

In the event Landlord Endorsement FMHO 3307 is part of this policy, the above coverages contained in Coverage D - Loss of Use is deleted.

**ADDITIONAL COVERAGES**

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass or Safety Glazing Material**

   a. We cover:

     (1) For all forms other than **HO 00 04** and **HO 00 06**, the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

       (a) Form **HO 00 04**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

       (b) Form **HO 00 06**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

     (2) For all forms other than **HO 00 04** and **HO 00 06**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

       (a) Form **HO 00 04**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

       (b) Form **HO 00 06**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

     (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass

or safety glazing material which is part of a building, storm door or storm window.

   b. This coverage does not include loss:

     (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

     (2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this ADDITIONAL COVERAGE 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For forms **HO 00 01** and **HO 00 08**, we will pay up to $100 for loss under this coverage. This coverage does not increase the limit of liability that applies to the damaged property. (This is Additional Coverage 8. in forms **HO 00 01** and **HO 00 08**.)

The following ADDITIONAL COVERAGE is added to all forms except **HO 00 08**. With respect to form **HO 00 04**, the words 'covered building' used below, refer to property covered under ADDITIONAL COVERAGE 10. Building Additions and Alterations.

11. **Ordinance or Law**

   a. You may use up to 10% of the limit of liability that applies to COVERAGE A (or for form **HO 00 04**, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

     (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a PERIL INSURED AGAINST;

     (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a PERIL INSURED AGAINST to another

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 47 of 73 PageID #: 51



part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a PERIL INSURED AGAINST.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is ADDITIONAL COVERAGE 10. in forms HO 00 01 and HO 00 06.)

## SECTION I - EXCLUSIONS

1. **Ordinance or Law** is deleted and replaced by the following:

1. **Ordinance or Law,** meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 1.a. in all forms other than HO 00 03, and 1.a.(1) in form HO 00 03, does not apply to the amount of coverage that may be provided for under ADDITIONAL

COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

b. The requirements of which result in a loss in value to property; or c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion 1.a. in form HO 00 03.)

2. **Earth Movement** is deleted and replaced by the following:

2. **Earth Movement,** meaning movement of the earth, whether combined with water or not, in any direction, including but not limited to:

a. Earthquake, including land shock waves or tremors before, during, or after a volcanic eruption;

b. Landslide, mud slide, or mud flow;

c. Subsidence or sinkhole; or

d. Any other earth movement, including earth sinking, rising, shifting, expanding, contracting, or eroding;

caused by or resulting from manmade, animal, or natural actions, events, or conditions.

If direct loss by fire or explosion ensues, we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

(This is Exclusion 1.b. in Form HO 00 03.)

4. **Power Failure** is deleted and replaced by the following:

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises," we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

(This is exclusion 1.d. in form HO 00 03.)

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 48 of 73 PageID #: 52



**SECTION I – CONDITIONS**

3. **Loss Settlement.** Under form **HO 00 06**, item **b.(2)** is deleted and replaced by the following:

   **(2)** If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

**SECTION II – EXCLUSIONS**

Under **1. COVERAGE E** - Personal Liability and **COVERAGE F** - Medical Payments to Others; item **a.** is deleted and replaced by the following:

   **a.** Which is expected or intended by one or more "insureds";

**SECTIONS I AND II – CONDITIONS**

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment or Fraud**

   **a.** Under SECTION I – PROPERTY COVERAGES, with respect to all "insureds" covered under this policy, we provide no coverage for loss under SECTION I - PROPERTY COVERAGES if, whether before or after a loss, one or more "insureds" have:

   **(1)** Intentionally concealed or misrepresented any material fact or circumstance;

   **(2)** Engaged in fraudulent conduct; or

   **(3)** Made false statements;

   relating to this insurance.

   **b.** Under SECTION II – LIABILITY COVERAGES, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

   **(1)** Intentionally concealed or misrepresented any material fact or circumstance;

   **(2)** Engaged in fraudulent conduct; or

   **(3)** Made false statements;

   relating to this insurance.

All other provisions of this policy apply.

Case 3.15-cv-00519   Document 1-1   Filed 05/05/15   Page 49 of 73 PageID #: 53



# INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

      Coverage A, Dwelling;

      Coverage B, Structure;

      Coverage C, Personal Property;

      and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

## METHOD

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

    a.  The policy; or

    b.  The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.

Case 3.15-cv-00519 Document 1-1 Filed 05/05/15 Page 50 of 73 PageID #: 54



## <u>NO</u> SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## <u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

HO 04 96 04 91

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion **1.b.** of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item **8.** imposes that limit on "business" property on the "residence premises." (Item **8.** corresponds to item **5.** in Form **HO 00 08.**);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9., 10.** and **11.** correspond to items **6., 7.** and **8.** respectively in Form **HO 00 08.**)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 51 of 73 PageID #: 55



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WINDSTORM OR HAIL DEDUCTIBLE—DWELLING

**The following special Deductible is added to the policy:**

For the premium charged, we will pay only that part of the total of covered direct physical loss to property covered under Section I of this policy caused by Windstorm or Hail that exceeds the Windstorm or Hail Deductible as shown on the Declarations as follows:

**A. When this Windstorm or Hail Deductible Applies**

This Deductible applies in the event of direct physical loss to property covered under this policy caused directly or indirectly by the perils of Windstorm or Hail.

If this policy includes a Hurricane Deductible endorsement that is applicable to a loss, this Windstorm or Hail Deductible endorsement will not apply to that loss.

**B. How the Windstorm or Hail Deductible Amount is Determined**

The Windstorm Deductible may be either a fixed dollar amount or percentage based, but not both. If percentage based, the amount of the applicable Windstorm or Hail Deductible shall be determined by multiplying the Coverage A limit of liability as shown in the Declarations by the Windstorm or Hail Deductible Percentage amount as shown on the Declarations.

**For Example,** *if your Windstorm or Hail Deductible is 2%, and your Coverage A limit of liability is $100,000, the dollar amount of your Windstorm or Hail Deductible is $2,000.*

If no Windstorm or Hail Deductible Percentage is shown on the Declarations, the amount of the applicable Windstorm or Hail Deductible shall be the dollar amount for the Windstorm or Hail Deductible as shown on the Declarations.

**C. Other Deductibles**

If the Windstorm or Hail Deductible amount under this endorsement is less than the base policy Section I Deductible as shown on the Declarations, the base policy Section I Deductible shall apply.

This endorsement does not provide additional insurance. All other provisions of this policy apply.



# LEAD POISONING EXCLUSION ENDORSEMENT

The following provisions are added to and made part of your Homeowners Policy:

Section I - Property Coverages do not apply to any costs or expenses incurred or loss arising out of:

1. the removal, testing for, monitoring, clean-up, abatement, treatment, or neutralization of lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead, or;

2. any governmental direction or other request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

1. arising out of lead paint, plaster or putty containing lead; soil or earth containing lead or any other material or substance containing lead, or;

2. any costs or expenses incurred or loss arising out of any claim, governmental direction, or request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

This exclusion applies to any obligation to share damages, costs or expenses with someone else or to repay someone else who must pay damages, costs or expenses.

# WAIVER OF DEDUCTIBLE - THEFT FROM RESIDENCE PREMISES

With the installation of a complete burglar alarm, reporting to either a police station or a central station, we will waive the deductible that applies for direct physical loss to the property described under Coverage A, B, and C as a result of theft, including attempted theft, from that portion of the "residence premises" protected by the alarm system.

A complete burglar alarm covers at the minimum all exterior doors. A dwelling which meets the minimum for a complete burglar alarm is considered protected in its entirety.

The waiver of deductible will not apply if:

a. The alarm system has not been activated, or the service has been discontinued;

b. The theft loss occurs off the "residence premises"; or

c. The theft loss occurs from a portion of the "residence premises" not protected by the alarm system.

All other provisions of this policy apply.

Case 3:15-cv-00519  Document 1-1  Filed 05/05/15  Page 53 of 73 PageID #: 57



## UNDERGROUND FUEL STORAGE TANK EXCLUSION

**The following provision is added to and made part of your Homeowners Policy:**

**Section II - Exclusions**

**The Paragraph below is added:**

**Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":**

arising out of the release of fuel or fuel products from an "underground storage tank system."

"Underground storage tank system" means the underground tank, the fill pipe, the vent pipes, and all associated fixtures, including pipe and tubing which contains or conveys fuel or fuel products from the underground storage tank to the point of combustion.

All other provisions of this policy apply.

FMHO 1097 (Ed. 1-97)                    Liberty Mutual Group                    Page 1 of 1

## EDUCATION COVERAGE ENDORSEMENT

We cover up to $5,000 for property owned by a school, while such property is in the possession of a named insured and being used in the course of employment, which is damaged by a Peril Insured Against and for which the named insured is held responsible by the school.

This additional coverage does not apply to:

1. Money, bank notes, bullion, gold, silver, platinum, coins or medals;

2. The legal obligation of an insured to pay because of the theft or unauthorized use of credit cards in the insured's possession;

3. Business data, including such data stored in:

   a. Books of account, drawing, or other paper records; or

   b. Electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

4. Manuscripts

This additional coverage does not increase the limit of liability for Coverage C - Personal Property. A $50 deductible applies to losses under this additional coverage. This insurance is excess over other valid and collectible insurance that applies to the school property.

All other provisions of the policy apply.

FMHO 2357                    Liberty Mutual Group                    Page 1 of 1



## ARSON REWARD

The following Additional Coverage is added to SECTION I - PROPERTY COVERAGES, Additional Coverages:

**Arson Reward.** We will pay up to $5,000 for information which leads to an arson conviction in connection with a fire loss covered by this policy. Regardless of the number of persons providing information, our limit shall not be increased. This $5,000 limit is in addition to the limit of liability applicable to the damaged or destroyed property.

Case 3:15-cv-00519 Document 1-1 Filed 05/05/15 Page 55 of 73 PageID #: 59



## Choose The Payment Option That Works For You

We are committed to making billing easy and hassle free. That is why we offer a selection of billing and payment options to choose from.

### PAYMENT OPTIONS

- **Electronic Funds Transfer (EFT).** Save time and money with our convenient EFT option. Once you enroll, your monthly insurance payment will be withdrawn directly from your checking/savings account and there are no installment charges. As a convenience, we will make every attempt to issue any refunds due to your bank account from which the payment was received. Sign up by visiting LibertyMutual.com/EFT.

- **Recurring Credit Card.** Save time and earn credit card rewards with our recurring credit card option. Once you enroll, your monthly insurance payment will be charged directly to your credit card. As a convenience, we will make every attempt to issue any refunds due to your credit card from which the payment was received. We accept all major credit cards including American Express, Visa, MasterCard and Discover. A charge will be applied to each monthly credit card installment.

- **Online.** Pay your bill online with eService at LibertyMutual.com/eService. Click to register, or if you already have an eService account, simply login.

- **Direct Bill.** Choose a billing frequency (i.e. Monthly, Quarterly, Pay in Full, Pay in Two and Bi-Monthly) that is right for you and receive paper bills by mail. A charge will be applied and appear under "Installment Charge" on your bill.

### REFUNDS

In most states and in most situations, any refunds owed will automatically be refunded in the same method your last payment was received. For example, if the last payment you made was with a credit card, we will apply your refund back to your credit card. We will refund electronic check payments back to your checking account instead of mailing you a check. Electronic check payments include:

- Check payments processed online at LibertyMutual.com
- A Liberty Mutual Service Rep initiated one-time check or EFT payment

However, we will typically mail a refund check in the following situations:

- The refund amount is greater than the last single payment amount received
- Your bank rejects an electronic refund
- Your credit card company rejects an electronic refund

If you have any questions please contact us at 1-615-371-6471/ 1-800-668-0593 and a representative will be happy to assist you.

Thank you for insuring with Liberty Mutual. We appreciate your business.

AUTO 2957 08 12



# NOTICE OF PRIVACY POLICY

Liberty Mutual* values you as a customer and takes your personal privacy seriously. When you request a rate quotation, apply for insurance, request changes to your insurance policy or submit a claim, you disclose information about yourself or members of your family. This notice tells you how we treat the information we collect about you.

## 1. INFORMATION WE MAY COLLECT

We collect information about you from:

- Applications or other forms you complete, and information you provide to us over the telephone;
- Your business dealings with us and other companies;
- Your employer or association for Liberty Mutual Group products;
- Consumer reporting agencies, Motor Vehicle Departments, inspection services and medical providers; and
- Visits to our Liberty Mutual website.

## 2. TYPES OF INFORMATION WE MAY DISCLOSE

We may disclose the following about you:

- Information from your application or other forms, such as your name, date of birth, address, social security number, vehicle and driver information;
- Information about your transactions with us, our affiliates or others, such as your insurance coverages, payment history, and certain claims information; and
- Information we receive from third parties, such as your motor vehicle records and claims history.

## 3. TO WHOM INFORMATION MAY BE DISCLOSED

We do not disclose personal information about you to anyone unless allowed by law. We are allowed by law to provide information to:

- A third party that performs services for us, such as claims investigations, medical examinations, inspections, and appraisals or for roadside assistance or the repair of your vehicle if you have a claim;
- Our affiliated companies and reinsurers;
- Insurance regulators and reporting agencies;
- Consumer reporting agencies to obtain loss history information, motor vehicle reports, or credit report information where permitted by law;
- State Motor Vehicle Departments to obtain a report of any accidents or convictions or to confirm your compliance with compulsory motor vehicle liability insurance laws;
- Law enforcement agencies or other government authorities to report suspected illegal activities;
- A person or organization conducting insurance actuarial, or research studies;
- Companies that provide marketing services on our behalf, or as part of a joint marketing agreement with banks, credit unions, and affinity partners, or providers of annuity and financial products and services offered through us to our customers; and
- As otherwise permitted by law.

## 4. HOW WE PROTECT INFORMATION

We maintain physical, electronic, and procedural safeguards to protect your nonpublic personal information. These safeguards comply with applicable laws. We retain your information for as long as required by law or regulation. The only employees or agents who have access to your information are those who must have it to provide products or services to you. We do not sell your information to mass marketing or telemarketing companies. Any information we share with third parties, such as those organizations which perform a service for us or market our products, is subject to appropriate confidentiality protections and may be used only for the purposes intended.



---

*This privacy notice is provided on behalf of the following Liberty Mutual companies and affiliates that provide personal automobile, homeowners, life insurance and annuities: Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Company of America, Liberty Northwest Insurance Corporation, Liberty Life Assurance Company of Boston, Liberty County Mutual Insurance Company (Texas only), Liberty Lloyds of Texas Insurance Company, LM Property and Casualty Insurance Company, LM Personal Insurance Company, Liberty Mutual Mid-Atlantic Insurance Company and LM General Insurance Company.

Case 3:15-cv-00519   Document 1-1   Filed 05/05/15   Page 57 of 73 PageID #: 61

**Liberty Mutual Group**

PO Box 1053
Montgomeryville, PA 18936-1053
Telephone: (615) 210-6352
Fax: (888) 881-2357

**Liberty Mutual™**

<u>**VIA E-MAIL**</u>

June 27, 2014

Mr. James D. Kay, Jr.
Kay, Griffin, Enkema & Colbert Attorneys At Law
222 Second Avenue North
Suite 340-M
Nashville, TN 37201

RE:    Claim Number:    026429254
        Date of Loss:     3/29/2013

Dear Mr. Kay:

This shall acknowledge the letter of representation received from you dated 6/13/2014 on behalf of your client, Jeffrey & Margo Hunter. Per your request, all future correspondence regarding this claim will be directed to you.

I will try to address the concerns you expressed in your letter and break them down as follows:

The first item you are questioning is the Coverage A, Dwelling settlement to date. You state that the Hunter's feel they are entitled to an additional $43,186.00 under the Coverage A, Dwelling, portion of the claim. You state that the Hunters have incurred $1,183,355.87 in costs related to the reconstruction of the dwelling, of which $77,927.01 was for debris removal. You state that they anticipate an additional $53,905.00 will be spent to complete the dwelling repairs, which will include window treatments, insulation and cabinetry. You included numerous documents to support this request.

We have reviewed your documentation and it is our position that the amount we have paid under the Coverage A, Dwelling, portion of the claim was adequate for the settlement on this loss.

You have stated that a second issue relates to the debris removal of personal property. You are requesting the 5% of the Coverage C limits, $36,806.50, are paid to the insured.

**Helping People Live Safer, More Secure Lives**

**EXHIBIT**
**2**

Our Personal Property Specialist, Javier Loubriel, has reviewed your documentation and feels the $2,877.28 which has been paid above the $740,546.78 Coverage C limits was adequate and that your request does not justify payment beyond what has already been paid on the claim and therefore no further payment is being made at this time.

Thirdly you have stated that the Hunters are entitled to an additional $58,627.64 under the Coverage B, Other Structures, portion of the claim.

We have reviewed the documentation you provided and acknowledge that an additional $7,350.00 is owed for the pool repairs (per the quote you provided from John Beers of New Look). Approval for this expense was previously communicated to Jeffrey Hunter and we will issue a payment for that amount.

We have reviewed the remaining Other Structure documentation you provide and are not in agreement with the amounts quoted. We are therefore unable to honor an additional payment under this coverage at this time.

Fourth you are requesting an additional $49,075.00 be paid under the Additional Coverage 3, Trees, Shrubs and Other Plants, portion of the claim. You included a $65,000.00 quote from Landscape Services, Inc (LSI) as your support for this request.

We have reviewed this quote and would note that a large portion of this would not fall under the definition of Trees, Plants and Shrubs. The quote included an irrigation system, outdoor lighting, yard and turf work as well as drainage. It would appear, without further investigation to document the damage, which these would fall under the Other Structure portion of the claim.

We feel the payment we issued, which included an allowance for Trees, Plants and Shrubs was adequate and do not agree with this request. No additional payment is being made at this time beyond the $7,350.00 will be made under the Other Structure coverage at this time.

The fifth item you are informing us about is with an additional $17,486.69 in loss of use expenses related to the claim. You provided us with several pages of documents that included Nashville Electric Service payment history, Metro Water payment history, and a breakdown of utility and lawn care payments to Ruthie Keene for the rental home.

As you will note under Coverage D – Loss Of Use, Additional Living Expense (ALE) this coverage applies to any necessary increase in living expenses incurred. We have reviewed these documents and calculate the increase in expenses above what would normally have been incurred equates to $4,607.15. Our breakdown is as follows:

2

Additional water utility incurred - $1,287.30
Additional electric utility incurred - $1,319.85
Lawn care - $2,000.00

We would be happy to consider the Natural Gas increase; however, we would need the payment history for the year prior to the loss date in order to calculate what increase in expense was incurred for Gas service.

Based upon the documentation we have received to date we feel the amount previously paid, along with this additional amount of $4,607.15, is the full amount owed at this time under this coverage.

The final request for an additional payment relates to the deduction of $3,497.19 for non-recoverable depreciation. You stated that you are unclear as to why these deductions were made, considering that the Home Protector Plus Endorsement (HPP) provides for payments made under Coverage's A and B are "without deduction for depreciation".

These deductions were made for Other Structure items in the estimate which were the walls/fences, sprinkler/irrigation system and driveway. A copy of the estimate was submitted to the insured on 4/17/2013 which states the deductions were for non-recoverable depreciation.

You are correct in so much as the HPP Endorsement provides for replacement cost under Coverage A or B; however, the deductions taken were applied to items that are not covered for replacement cost. The endorsement states under Section B, sub-section 3.b. "Awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings, and structures that are not buildings; at actual cash value at the time of loss but not exceeding the amount needed to repair or replace". These items are considered structures that are not buildings. We therefore cannot make an additional payment as reimbursement for these non-recoverable items.

You requested an explanation for the Inflation Protection Endorsement to the policy. The Inflation Protection Endorsement states the following:

### INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

> Coverage A, Dwelling;
> Coverage B, Structure;
> Coverage C, Personal Property;

3

and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

**METHOD**

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

    a. The policy; or
    b. The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.

The Inflation Protection Factor applied to this loss was 1.006; therefore the applicable coverage limits are as follows:

    Coverage A, Dwelling - $981,500.00 x 1.006 = $987,389.00
    Coverage B, Other Structure - $98,150.00 x 1.006 = $98,738.90
    Coverage C, Personal Property - $736,130.00 x 1.006 = $740,546.78
    Coverage D, Loss of Use - The IPP Factor was not applied to Coverage D, Loss Of Use as the Home Protector Plus Endorsement does not apply a dollar limit and applies the 12 consecutive month limit following the date of loss.

Finally, your letter requested that Liberty Mutual Insurance pay the Hunters $275,000.00 within 10 days from the date of your letter in an effort to "put the claim to rest". You further stated that without said payment you requested we consider the letter as a "demand for an appraisal" under the Policy. We therefore honor your request and agree to invocation of the Appraisal clause of the Policy which reads as follows:

4

**Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

   **a.** Pay its own appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

We are naming Carl Michael (Mike) Gates of Property Loss Services, Inc. as our competent appraiser. The contact information for Mr. Gates is as follows:

Mike Gates
3886 Rogers Bridge Road, Suite 603
Duluth, GA 30097
(770) 381-8855
mgates@plsclaims.usa

We await the naming of your appraiser in order to resolve this matter and bring the Hunters claim to a final resolution.

Sincerely,

*Joseph L. Dryden*

Joseph L. Dryden
Sr. Property Loss Specialist
Homeowner Claims Department

5



Liberty Mutual INSURANCE

Liberty Insurance Corporation
Southern Region
PO Box 100131
Marietta, GA 30061-7031
Office: (615) 210-6352
Fax: (888) 881-2357

April 17, 2013

Jeffrey Hunter
Margo Hunter
789 Elysian Fields Rd
Nashville, TN 37204-4416

Claim Number: 026429154-01
Date of Loss:   3/29/2013

Dear Jeffrey Hunter & Margo Hunter,

We have recently reviewed your claim for damages and would like to take this opportunity to explain your payment, which will be mailed to you separately.

Your payment for covered damages was calculated as follows:

| | | |
|---|---:|---|
| $ | 987,389.00 | Dwelling *The Dwelling IPP limits on your policy per the TN Value Policy statutes.* |
| $ | 38,467.53 | Other Structures such as a detached garage, shed, fencing, etc. |
| $ | 1,025,856.53 | CLAIM TOTAL (prior to the following adjustments, as applicable) |
| $ | (3,497.19) | Less applicable non-recoverable depreciation |
| $ | (0.00) | Less applicable recoverable depreciation *(not applied)* |
| $ | (1,000.00) | Less applicable deductible |
| $ | 1,021,359.34 | Amount paid to you |

A copy of our estimate to repair the damaged property is included with this payment explanation letter. We have also included a letter explaining the additional living expense (ALE) coverage for this claim.

Please review the information provided below to help you understand your payment and the claim process.

Helping People Live Safer More Secure Lives

HO19

EXHIBIT

**Depreciation**

- If non-recoverable depreciation has been applied to a portion of your loss, your policy requires that property of this type be settled at actual cash value (depreciation applied).
- If recoverable depreciation has been applied, your policy allows for reimbursement for those depreciated items not exceeding the total amount it cost to repair or replace. Once the repairs are completed or the items have been replaced, please submit your receipt(s) to Liberty Mutual for review.
- The following conditions are required prior to reimbursement of recoverable depreciation:
    1. The structure must be repaired or property must be replaced.
    2. You must have documentation to support that you have paid for the repairs or replacement of property.

**Before Starting Repairs (applies to Dwelling and/or Other Structure claims)**

- Before repairs begin, please show our estimate to your contractor. If your contractor's estimate exceeds the amounts in our estimate, please contact us prior to beginning the work.
- If your mortgage company is named on your settlement check, you will need to contact your mortgage company to review its procedures for handling claim checks.

**Requesting Recoverable Depreciation**

- Once the repairs are completed or the items have been replaced, please submit paid bills, receipts and/or cancelled checks for the repairs or replacement, including claim number, to the mailing address or fax number listed above. We will then consider payment of the difference between your incurred repair or replacement cost and the actual cash value of the loss. A reinspection of the repairs may be required.
- When submitting receipts for the replacement of personal property, please indicate on the receipt the corresponding item number from the personal property worksheet.

If you have any questions or concerns about your claim, please contact us at the telephone number or email address below. When contacting by email, please include your claim number in the subject line.

Liberty Mutual appreciates the opportunity to be of service to you, especially in your time of need. Your satisfaction is extremely important to us, and we hope our level of service has exceeded your highest expectations. We rely on our customers' feedback to identify areas of excellence, as well as things on which we can improve. If you have comments you would like to share with us about your recent claims experience, please send them to our Customer Service email address listed below. You may also write us at the address or call us at the toll free number listed above.

Thank you for insuring with Liberty Mutual Insurance. We appreciate your business.

Sincerely,

Joe Dryden
Homeowner Claims Department
Tel: (615) 210-6352
Fax: (888) 881-2357
Email: joseph.dryden@libertymutual.com

Customer Service Email: socustomerservice@libertymutual.com

**Helping People Live Safer More Secure Lives**                    HO19

enclosures

*This letter should not be construed as a waiver or estoppel of any of the terms, conditions or defenses afforded by the policy or applicable law.*

## KAY, GRIFFIN, ENKEMA & COLBERT

### A PROFESSIONAL LIMITED LIABILITY COMPANY
### ATTORNEYS AT LAW

JAMES D. KAY, JR.
JOHN J. GRIFFIN, JR.
JOHN B. ENKEMA
RICHARD L. COLBERT
W.W. FRANK WILBERT
COURTNEY LYNCH WILBERT
THOMAS W. SHUMATE IV
BENJAMIN E. GOLDAMMER
A. STUART GRIMSON
C. JOSEPH HUBBARD

222 SECOND AVENUE NORTH
SUITE 340-M
NASHVILLE, TENNESSEE 37201
(615) 742-4800
FAX: (615) 742-4801
WWW.KAYGRIFFIN.COM

June 13, 2014

<u>VIA E-MAIL</u>

Mr. Javier Loubriel
Liberty Mutual Insurance
javier.loubriel@libertymutual.com

Mr. Joseph Dryden
Liberty Mutual Insurance
joseph.dryden@libertymutual.com

  Re: Insureds: Jeffrey and Margo Hunter
    Claim No.: 026429154-01

Dear Gentlemen:

  We represent Jeffrey and Margo Hunter (the "Hunters"). Please direct all future communications with the Hunters directly to me.

  The Hunters are insured under a LibertyGuard Deluxe Homeowners Policy, No. H37-251452449-40 (the "Policy"), issued by Liberty Mutual Insurance ("Liberty"). The Hunters previously submitted a claim to Liberty, related to a fire that occurred at their residence in 2013. To date, Liberty has failed to pay the Hunters the entire amount they are owed under the Policy related to the fire loss.

  The Hunters are demanding a payment from Liberty in the amount of $275,000.00 to resolve this claim in full. This demand is based on the following:

  First, the Hunters are entitled to at least $43,186.00 on the Coverage A, Dwellings, portion of the claim ($1,030,575.00 limits - $987,389.00 paid = $43,186.00). The Policy provides limits of $1,030,575.00 for the dwelling ($981,500.00 in base limits and up to an additional $49,075.00 for debris removal). Liberty has paid the Hunters $987,389.00 on this portion of the claim. The Hunters have actually incurred $1,183,355.87 in costs related to the reconstruction of the dwelling (<u>Exhibit 1</u>), of which $77,927.01 is for debris removal (<u>Exhibit 2</u>). The

EXHIBIT
4

Hunters estimate that at least an additional $53,905.00 will be spent to complete the dwelling, which includes window treatments, insulation and cabinetry.

Second, a portion of the $77,927.01 for debris removal referenced above relates to the removal of personal property debris. The Policy provides $36,806.50 for personal property debris removal (5% of the $736,130.00 Coverage C limits), which has never been paid.

Third, the Hunters are entitled to at least $58,627.64 on the Coverage B, Other Structures, portion of the claim ($103,057.50 limits - $44,429.86 paid = $58,627.64). The Policy provides limits of $103,057.50 for other structures ($98,150.00 in base limits and up to an additional $4,907.50 for debris removal). Liberty has paid the Hunters $44,429.86 on this portion of the claim. The Hunters have actually incurred $49,869.00 in costs related to the reconstruction of the other structures, of which $30,563.00 is for debris removal (Exhibit 3). The Hunters estimate that at least an additional $71,213.06 will be needed to complete the repair of the other structures, which includes driveway repairs, pet fencing, pool repairs and power washing the patio.

Fourth, the Hunters are entitled to at least $49,075.00 on the Additional Coverage 3, Trees, Shrubs and Other Plants, portion of the claim. The Policy provides limits of $49,075.00 for trees, shrubs and other plants. The Hunters have obtained a $65,000.00 bid to replace their trees, shrubs and other plants (Exhibit 4). To date, Liberty has not paid any monies on this portion of the claim.

Fifth, the Hunters have incurred an additional $17,486.69 in loss of use expenses related to the claim, which have yet to be reimbursed (Exhibit 5). Since Liberty has yet to provide the Hunters with any reconciliation of the loss of use expenses, my clients are making a demand for the entire $17,486.69. We have reviewed the expenses for the year following the loss and believe there are additional costs that may be reimbursable.

Sixth, Liberty's April 17, 2013 explanation of payment on the dwelling / other structures portion of the claim reflects a deduction of $3,497.19 for non-recoverable depreciation (Exhibit 6). Other payments have contained a similar deduction. We are unclear on why these deductions were made, considering that the Homeprotector Plus Endorsement provides that payments under Coverages A and B are "without deduction for depreciation".

Finally, the Inflation Protection Endorsement to the Policy provides for an increase in all of the limits listed above. My clients have been told that the endorsement results in an approximate 15% increase in the limits referenced above, which would result in $160,000+ in additional available coverage. Please provide

2

me with Liberty's position as to the amount by which the limits are increased based on this endorsement and the basis for the calculation.

My clients are requesting that this $275,000.00 be paid within 10 days from the date of this letter. This $275,000.00 will be far less than the Hunters will actually spend to complete the work and we are confident that, if submitted to an appraisal, the outcome would be more favorable to the Hunters. However, in order to allow both sides to put this claim to rest and avoid the time and expense of litigation and an appraisal, the Hunters are proposing a settlement of $275,000.00.

If the $275,000.00 is not paid within this 10 day time period, please consider this letter to be a demand for an appraisal under the Policy. Liberty has been in possession of much of this information for weeks, and in some instances months, and there is no legitimate reason for further delay.

I look forward to hearing from you.

Sincerely,

James D. Kay, Jr.

IN PRIVATE APPRAISAL PROCEEDINGS BEFORE DAVID K. TAYLOR

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFFREY HUNTER and MARGO HUNTER, | ) |
| | ) |
| Respondents. | ) |

## UMPIRE APPRAISAL RULING

This matter comes before the undersigned under Section I – Conditions, Subpart 6 – Appraisal, of the LibertyGuard Deluxe Homeowners Policy, No. H37-251-452449-40 (the "Policy"), issued by Liberty Mutual Insurance Company ("Liberty").

In March, 2013, the residence owned by Jeffrey and Margo Hunter (the "Hunters") at 789 Elysian Fields Road, Nashville, Tennessee was damaged in a fire loss (the "Event"). At the time of the Event, the Hunters and their residence were insured by Liberty under the Policy. The Hunters submitted a claim to Liberty related to Event under the Policy, and it was reported that Liberty made certain payments to the Hunters.

A dispute thereafter arose between Liberty and Hunter with regard to the amount of the "loss" incurred by the Hunters under the Policy as a result of the Event. This dispute resulted in Liberty invoking the appraisal clause and process

EXHIBIT

5

described and contained in Section I – Conditions, Subpart 6 – Appraisal of the Policy (the "Appraisal Process"). Under the Appraisal Process, Liberty appointed Mike Gates as its designated appraiser. The Hunters appointed Gary Willits as their designated appraiser. While the goal was to have both Appraisers reach agreement on the loss, in the event that they could not, the parties mutually agreed to appoint the undersigned as the "Umpire" as called for in the Appraisal Process.

Both Appraisers submitted their separate written appraisals and calculations of the "loss" to each other and the Umpire. The Appraisers then worked together in good faith to narrow any differences so that submitting the matter of the "loss" to the Umpire would be unnecessary. However, the Appraisers reported to the Umpire that they were unable to reach full agreement on the amount of the loss. Therefore, on January 2nd. 2015, the Umpire scheduled and held a meeting at his offices in Nashville, Tennessee during which both Appraisers were present. All of this was helpful and necessary in order to assist the Umpire in evaluating the amount of the loss. The Appraisers also, after the meeting, have presented additional written arguments supporting their respective positions on the loss and how the Umpire should make his ruling. I have also received and reviewed additional arguments made by counsel for both parties.

Based on all information submitted and the arguments made, the undersigned appointed Umpire hereby finds that the amount of the Hunters' loss under the Policy resulting from the Loss totaling $1,521,299.06 and broken down as follows:

| | |
|---|---|
| Coverage A – Dwelling | $1,294,703.04 |
| Coverage B – Other Structures | $89,855.90 |
| Additional Coverage – Debris Removal Related to Removal of Debris Under Coverage A, B and C | $63,053.76 |
| Additional Coverage – Trees, Shrubs, Other Plants and Lawns | $73,686.36 |

Those costs outlined above represent the cost of repair / replacement of the covered property (using like construction on the same premises and intended for the same occupancy and use as existed prior to the fire loss) and/or the actual cash value, as applicable.

Pursuant to Section I – Conditions, Subpart 6 – Appraisal of the Policy, this ruling has been signed by the Umpire below to evidence his findings. Under the Appraisal Process, this ruling is being submitted via electronic mail and regular mail to the Appraisers for their review and consideration, and they are requested to, no later than the end of business on Friday, February 6, 2015, indicate as shown below if they agree or disagree with this ruling and return this Award not only to the Umpire, but to each other and also to counsel for the parties (who have been copied on emails). Under the Appraisal Process, if one of them agrees with this ruling, then the final number will set the amount of the "loss" as set forth in the Policy.

3

This ruling is made subject to all terms, conditions and provisions of the Policy.

Page 3

_David K. Taylor, Umpire_

Date: January 29, 2015

_____
Mike Gates, appraiser
____ I decline to accept the Umpire's Loss Calculation
____ I accept the Umpire's Loss Calculation

Date: _____, 2015

_____
Gary Willits, appraiser
____ I decline to accept the Umpire's Loss Calculation
_X_ I accept the Umpire's Loss Calculation

Date: 1-29, 2015

4

7012 3460 0002 8948 4945

FIRST CLASS



02 1M
0004292626    APR 08 2015
MAILED FROM ZIP CODE 37243

$ 09.50⁰
PITNEY BOWES
UNITED

7012 3460 0002 8948 4945            4/6/15
LIBERTY MUTUAL INSURANCE COMPANY
2908 POSTON AVENUE,  % C S C
NASHVILLE, TN  37203